

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00238-CR

JASMINE N. FRANCIS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2012-434,263, Honorable John J. "Trey" McClendon, Presiding

September 12, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Jasmine N. Francis was convicted of two counts of injury to a child. One involved injury through action while the other concerned injury by omission. On appeal, she questions the legal sufficiency of the evidence underlying each, as well as the trial court's refusal to submit to the jury an instruction on a lesser-included offense and an instruction on the defense of mistake. Whether she was exposed to double jeopardy is also a contention she broached. We affirm.

*Background*

Appellant gave birth to the child in question. It is undisputed that the child, who was less than two months old at the time, had suffered a fractured skull. The fracture was caused by blunt force consisting of more than the child simply falling from a bed or being bumped against a hard object. It also manifested itself in the form of displacement of the fractured bones within the skull; that is, the break was not simply linear. Rather, portions of the bone were displaced, and the child's head (where the displacement occurred) felt "mushy" like overripe fruit, according to one witness. The fracture also resulted in the child experiencing strokes, permanent brain damage, and partial paralysis.

When the child was eventually seen by medical personnel, they noted that the trauma was not "acute," that is, of recent origin. Apparently, it occurred some five days earlier. And, one physician opined that had the child's delivery to the hospital not been delayed, the permanent damage she suffered could have been reduced.

Of further note is the evidence illustrating that appellant was not the person who took the infant to the hospital, but rather the infant's grandmother, Sheila. The latter had visited appellant's home the preceding weekend and observed that the child's head was cone-like. She broached the matter with appellant and informed her that the infant needed medical care. Appellant responded by saying that her mother planned to take them to secure such care that day. Yet, this representation proved false, as did the ensuing utterance made by appellant to Sheila the following Wednesday. On that date, appellant told Sheila that a doctor had seen the infant when no physician actually did. Two days later, Sheila opted to take the infant to the hospital herself.

Though the cause of the trauma was deduced (*i.e.*, blunt force), the specific manner in which it was inflicted remained unknown. Appellant initially explained that she "bumped" the child's head against a wall. Then she uttered that 1) she had tripped over power cords lying on the floor while holding the baby, or 2) the infant somehow fell against a table, or 3) the child hit her head against a concrete wall. Yet, none of those incidents could have been sufficient to cause the extensive trauma actually suffered, according to expert witnesses. Finally, appellant also denied knowing of the injuries or their seriousness, despite other witnesses describing the obvious nature of the trauma.

*Issue 1 – Sufficiency of the Evidence, Count 1*

In her first issue, appellant argues that the evidence is insufficient to show that she intentionally or knowingly caused serious bodily injury to her five-week-old daughter. We overrule the issue.

The pertinent standard of review is discussed in *Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010) and need not be further developed here. Next, to garner a conviction, the State was obligated to prove that appellant intentionally and knowingly caused serious bodily injury to her child. TEX. PENAL CODE ANN. § 22.02(a)(1) (West Supp. 2012). One acts intentionally with regard to that *mens rea* when he has the conscious objective or desire to cause the result. *Id.* § 6.03(a) (West 2011). To prove that the actor knowingly caused the injury, it must be shown that she was aware that her conduct was reasonably certain to cause the result. *Id.* § 6.03(b). Each of the foregoing categories of *mens rea* may be illustrated through circumstantial evidence, and such circumstantial evidence may come in the form of the actor's conduct, *Moore v. State,* 969 S.W.2d 4, 10 (Tex. Crim. App. 1998), or the extent of injuries suffered, the

3

method used to produce them, and the relative size and strength of the parties involved. *Patrick v. State,* 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).

As previously mentioned, appellant represented that she did not know of the injuries or their extent. Yet, other evidence of record illustrated that the trauma to the infant's head was readily observable. Indeed, others not only saw it but directed her to seek medical treatment for it. Instead of heeding that advice, she lied about the baby having seen a doctor. And, when eventually asked about how the injuries occurred, appellant uttered contradictory stories. This evidence of deceit or evasion can be considered by a factfinder as consciousness of guilt. *Couchman v. State,* 3 S.W.3d 155, 163-64 (Tex. App.–Fort Worth 1999, pet. ref'd) (stating that effort to deceive or change one's story can be considered indicative of consciousness of guilt). To it, we add the expert testimony indicating that the force exerted to cause the injuries had to be greater than that emanating from a bump, or falling against furniture, or the like. Instead, it had to be "violent" or "significant" or "major." That is, appellant had to have exerted a force greater than the one she described (via her differing explanations) as having been exerted to cause the damage found. Given the quantum of force that had to have been forthcoming from appellant to cause the injuries to her infant, the extent of those injuries, appellant's hesitance to take and deceptions about taking the infant to garner medical care, and the differing stories about how the injuries occurred, rational jurors could infer beyond reasonable doubt that appellant either had the conscious desire to cause the injuries or was aware that her conduct was reasonably certain to cause them.

4

*Issue 2 – Lesser-Included Offense – Count 2*

In her second issue, appellant argues that the trial court should have submitted an instruction on the lesser-included offense of recklessly causing serious bodily injury by failing to obtain medical care for her daughter.  We overrule the issue.

A crime may be a lesser-included offense if it differs from the charged offense only in the respect that a less culpable mental state suffices to establish its commission. The less culpable mental state involved here is recklessly causing serious bodily injury, as opposed to intentionally or knowingly causing such injury.  *See* TEX. CODE CRIM. PROC. ANN. art. § 37.09(3) (West 2006).   Next, the *mens rea* of reckless is defined as being aware of but consciously disregarding a substantial and unjustifiable risk that the result will occur.   TEX. PENAL CODE ANN. § 6.03(c) (West 2011).   The evidence purportedly entitling appellant to the instruction at issue was that indicating the child revealed no signs of injury.  Yet, if the infant revealed no signs of injury, then it cannot logically be said that appellant could have been aware of any injury subject to being disregarded.   In other words, one cannot consciously choose to disregard a matter about which she knew nothing.  So, the evidence allegedly entitling her to the lesser instruction actually did not.

*Issue 3 – Mistake of Fact – Count 2*

Next, appellant claims she was entitled to an instruction on mistake of fact.  The fact about which she was purportedly mistaken involved knowledge of the infant's trauma.  We overrule the issue.

Mistake may be a defense to prosecution.  *Id.* § 8.02(a) (West 2011).  However, the trial court has no duty to *sua sponte* instruct the jury on unrequested defensive

5

issues, such as mistake of fact. *Posey v. State,* 966 S.W.2d 57, 63 (Tex. Crim. App. 1998) (involving a mistake of fact instruction that the defendant did not request). Here, appellant did not request the instruction at issue; thus, she waived her complaint about not receiving one. *Mays v. State,* 318 S.W.3d 368, 383 (Tex. Crim. App. 2010), *cert. denied,* ___ U.S. ___, 131 S.Ct. 1606, 179 L.Ed.2d 506 (2011) (also involving the defense of mistake of fact).

*Issue 4 – Double Jeopardy*

Appellant next contends that she was subjected to double jeopardy when indicted and tried for both causing serious bodily injury by act or omission. We overrule the issue.

It is true that the State charged appellant with and tried her for both causing serious bodily injury to her daughter by striking her with or against an object and by omitting to seek medical care for the child. Similarly true is that our Court of Criminal Appeals held, in *Villanueva v. State,* 227 S.W.3d 744 (Tex. Crim. App. 2007) "that the Legislature intended that serious bodily injury committed against the same victim at the same time should be considered the same offense for purposes of the double-jeopardy prohibition against multiple punishments regardless of whether that injury to that victim resulted from the actor's act, his omission, or by a combination of his act and omission." *Id.* at 748. In so concluding, however, it distinguished the circumstances before it from those in another of its opinions, that is, *Luna v. State,* 493 S.W.2d 854 (Tex. Crim. App. 1973). According to the court, *Luna* stood for the proposition that a defendant could lawfully be convicted for "two violations of the same statutory provision on the same day, so long as the State can prove that two separate and discrete incidents occurred

6

on that day comprising two violations . . . ." *Id.* at 748-49. This then lead the court to opine:

> Had the appellant [in *Villanueva*] continued to prevent Legg from taking G.V. to the hospital on the morning of July 30[th], when G.V.'s condition was obviously deteriorating and it was apparent that he might suffer further serious bodily injury absent medical intervention, we think that the principle in *Luna* could well apply. Under those hypothetical circumstances, it could reasonably be said that the failure to seek treatment for G.V.'s apparent injuries resulted in a separate and discrete, or at least incrementally greater, injury for which the appellant could also be held criminally accountable without violating double jeopardy. But here we can point to no omission that caused any injury beyond that which the appellant had caused by his act.

*Id.* at 749.

Combining the above references from *Villanueva,* we are led to conclude that a defendant is not *ipso facto* exposed to double jeopardy simply because he is charged with causing serious bodily injury to a child by an act and by omission. Where the act caused an initial injury and that injury was made greater by later denying the child medical treatment, two discrete offenses may indeed exist permitting their prosecution without hindrance from the double jeopardy prohibitions. And, that is what the evidence illustrated here.

Appellant caused the infant to suffer serious bodily injury by striking the baby with or against a blunt object. Then she opted to forego medical treatment for the child not only on the day of the initial injury but also on the ensuing days. Moreover, expert testimony indicated that appellant's decision to forego medical treatment for her child over those ensuing days caused or theoretically caused greater trauma to the child. The permanent damage suffered would not have been as great had appellant not ignored Sheila's repeated admonishments to take the baby to the hospital for the rather

7

apparent and ongoing injury to the child's skull.  So, we have before us evidence of discrete conduct causing discrete injuries subject to prosecution without hindrance by double jeopardy.

*Issue 5 – Sufficiency of the Evidence – Count 2*

Appellant finally challenges the sufficiency of the evidence supporting the jury's determination that she caused serious bodily injury to the child by failing to obtain medical care.  We overrule the issue.  In doing so, we cite the evidence detailed through this opinion.  It disclosed both injury caused by appellant's act and further injury caused by the failure to subject the infant to medical attention, or at least a rational factfinder could have so interpreted it beyond a reasonable doubt.

Accordingly, the judgments are affirmed.


Brian Quinn
Chief Justice

Do not publish.

8